**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION**

MILLER'S FURNITURE OF MERCER COMPANY, d/b/a HANEY'S COMFORT LIVING FURNITURE, a Pennsylvania Corporation, individually and as the representative of a class of similarly-situated persons,

Plaintiff,

v.

DJM ADVISORY GROUP, LLC, BANNER LIFE INSURANCE COMPANY, and WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, DJM ADVISORY GROUP, LLC, DONALD QUIRKE and JOHN DOES 1-12

Defendants.

Civil Action No. 2:17-cv-000456-UA-CM

**PLAINTIFF'S BRIEF IN OPPOSITION TO INSURER DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT**

Plaintiff, Miller's Furniture of Mercer Company d/b/a Haney's Comfort Living Furniture ("Haney's" and "Plaintiff"), files this Brief in Opposition to Defendants' Motion to Stay, to Dismiss or to Transfer, stating as follows:

**THIS CASE AND *JWD* ARE *NOT* IDENTICAL**

The premise of the Insurer Defendants' Motion to Stay is that this action is so similar to *JWD v. DJM, et al,* that is also pending before this Court, that merely allowing this case to proceed would be so wasteful of judicial resources and staying it would be so bereft of any prejudice to Plaintiffs, that the Court should stay these

proceedings pending approval of the *JWD* settlement. [1] However, their position is flawed both factually and legally.

The Insurer's argument depends heavily on the degree of similarity of the two actions. Hence, they claim that "this case is identical in all material respects" to *JWD* (Motion at 2); that the two cases allege TCPA violations "against the same defendants." (*Id.* at 2-3); that "this case duplicates *JWD*..." (*Id.* at 3); that the allegations in *JWD* "differ in no material way from those in this case." (*Id.* at 4); and "Plaintiff in this case proposes to represent the same class on the same claims as the plaintiffs in ... JWD..." (*Id.* at 6). They have, however, considerably overstated the resemblance of the two cases.

The first, and perhaps most significant difference between the cases is that the parties are not the same. Unlike in *JWD*, there are a series of John Doe defendants in this case and Donald Quirke, the founder, president and owner of DJM.[2] This is significant because Mr. Quirke could potentially have applicable insurance coverage that the entity-defendants do not. He may also possess sufficient assets to make a recovery by the class either more likely or more complete. Until Plaintiff is permitted to conduct some discovery (even limited discovery), it is unable to even assess either of these possibilities.

---

[1] Plaintiffs call to the Court's attention that the Honorable Judge John E. Steele is presiding over the pending settlement in *JWD*. Plaintiffs has no objection to the transfer of this case to Judge Steele as a matter of judicial efficiency.

[2] Thus, Insurers are wrong that "the only meaningful distinctions between the cases are the named plaintiffs and the plaintiffs' lawyers." (Motion at 4). JWD withdrew all claims against its John Doe defendants and, therefore, are precluded to amend to include Mr. Quirke or any other defendant.

In addition to the claims in *JWD*, significantly, Plaintiffs in the present action have also asserted three common law tort claims that are also not present in JWD. These tort claims, (1) trespass to chattel, (2) common law private nuisance, and (3) conversion also differentiate this action from *JWD.* Acknowledging the existence of these claims in a footnote in their Motion, the Insurers claim that Plaintiff's additional claims are "incidental" to the TCPA claim. They contend that the tort claims are incidental to the TCPA-claims. This also is not true. In *Bell v. Money Res. Corp.*, No. 08-cv-639, 2009 WL 382478, (E.D. Pa. Feb. 13, 2009), the rejected the argument that such claims are *de minimis*, explaining:

> [w]hile the costs of lost paper and ink are minimal, Pennsylvania courts permit conversion claims for only nominal damages [...] Accordingly, even accepting Defendant's argument that Plaintiff's actual damages are trivial, the Court declines to dismiss a conversion claim that could, if successful, recover nominal damages. *Id.* at 5.

Unlike *JWD*, this complaint has three (3) separate Pennsylvania and national classes, one for each of these common law claims (PA Conversion Class, ¶40)(PA Trespass Class, ¶43)(PA Nuisance Class, ¶46). This Court application of Pennsylvania law to these claims controls, at least to potentially thousands of class members who, even with the proposed settlement class, are not adequately made aware of this claim.

Furthermore, a TCPA claim and common law privacy claims have ***different*** factual predicates. "While the fact that the faxes contained advertising was relevant to demonstrating a TCPA claim, any privacy interest in being free from an unwelcomed fax is unaffected by the content of the material." Thus, Plaintiff's tort claims are *not* "incidental" to the TCPA claims. *See, State Farm General Insurance*

*Company v. JT's Frames. Inc.,* 2010 WL 297999 at *9, n. 15 (Ct. Appeal April 28, 2010).

Finally, the applicability of insurance policies is not infrequently affected by whether or not the asserted claims are tort claims. Like the coverage potentially applicable to Defendant Quirke, this is an issue that warrants discovery.

Plaintiff would request a short time period to engage in limited discovery for purposes of whether the Court should stay this case as more fully detailed below.

**THE INSURERS HAVE NOT MADE THE SHOWING NECESSARY TO JUSTIFY THE STAY THAT THEY SEEK**

It is well-settled that "[a] stay is considered an 'extraordinary relief' for which the moving party bears a 'heavy burden.'" *Cherry v. D.B. Zwirn Special Opportunities fund, L.P.*, 2010 WL 571833 at *1 (M.D. Fl. Feb. 16 2010) (quoting, *Winston–Salem/Forsyth County Bd. Of Edu. v. Scott,* 92 S.Ct. 1236 (1971)). The Insurers have not met that burden.

In *Garmendiz v. Capio Partners*, LLC, 2017 WL 3208621 (M.D.Pa. July 26, 2017), this court recently set forth the requirements for obtaining a stay of the proceedings.

> Consistent with the Supreme Court's holding in *Landis* [*v. North American Company* 57 S.Ct. 163 (1936)], court[s] have examined the following factors to determine if a stay is appropriate: (1) whether the stay would prejudice the non-moving party, (2) whether the proponent of the stay would suffer a hardship or inequity if forced to proceed, and (3) whether granting the stay would further judicial economy.

*Id*. at *1. These requirements are effectively the same as the requirements listed by the Insurers in their Motion.

**A Stay Would, Without Question, Prejudice the Plaintiff**

Initially, the Insurers discuss the first *Garmendiz* requirement—whether the stay would prejudice the non-moving party. They argue that such non-prejudice flows from the fact that the stay will be for a limited time until the parties and the Court know whether the *JWD* settlement will be approved. However, the Insurers have truly missed the point, Plaintiffs are not concerned about a reasonable delay in the proceedings. Instead, they are very worried that this is a very bad settlement that is being shoved down the collective throat of the class.

The gross amount of the settlement is $3,500,000.00, which, after payment of counsel fees and expenses, would be distributed to up to the 1,248 class members – at a maximum of $500.00 per member. This would amount to a maximum distribution to the class of $624,000. Any remaining funds revert back to Defendants. If only 10% submit a claim, then the Defendants will pay the attorney $1M+ in attorney fees, $62,500 to the class, and return the balance of approximately $2.5M to the Defendants as a reverter.

However, Defendants' own records – records which the Plaintiffs in this case have yet to receive – indicate that up to 359,000 additional fax transmissions could have been sent. Therefore, the class could have had an additional 359,000 members, and at the statutory maximum of $500.00, means that the potential liability to Defendants could be an *additional* $179,500,000.00. *The proposed settlement is but 1.9% of what Defendants potential liability, or even less if funds revert back to Defendants*.

Thus, the proposed settlement appears to be neither fair, adequate, nor reasonable, and it is exceptionally low when the range of possible recovery is considered – unless there are prevailing matters of insolvency or insurance coverage issues which pose a significant hurdle. Discovery would reveal such an issue as the settling parties have failed to state such in their settlement documents.

It is the possibility of such a grossly inadequate settlement that impels Plaintiff to oppose the proposed stay at this juncture so that they can press to receive the discovery described herein, which will go a long way towards settling the foregoing question about the adequacy of the settlement.

To be clear, the discovery that Plaintiff seeks will be neither expensive nor time-consuming to provide and likely can be obtained in 14 days by the defendants. If allowed to proceed with discovery, Plaintiff will request: 1) all communication between the law firms and the parties to the settlement, including emails; 2) all discovery served by, propounded upon, or obtained by any of the parties; 3) all settlement materials, including mediation statements; 4) copies of all insurance policies and all non-privileged communication between any of the defendants and their insurer(s) and/or indemnitor(s); and, 5) a copy of the log of all fax numbers for the disputed fax transmissions. While the JWD parties may claim that this information is privileged, the Plaintiff in this case is, at this time, a class member. Furthermore, Plaintiff and his counsel will sign-on to any reasonable confidentiality agreement which was used in *JWD* as a matter of efficiency.

In fact, if the Court denies the requested stay, Plaintiffs would be able to receive and review the foregoing discovery before the final approval hearing on

December 4, 2016. Based on that discovery, they would be able to determine if their concerns are well-founded, or not. The Insurers argue in their Motion that the proper way for Plaintiff to proceed is to file an objection in *JWD*. At this time, however, he is entitled to discovery not as an objector but as a class member.[3] However, he would like to have received sufficient information to determine if an objection is appropriate, and if it is appropriate, to show the Court why the settlement should not be approved.

**Entry of the Requested Stay would Elevate a False Claim of Judicial Efficiency Above a Considered Analysis of the Fairness of the Settlement**

The Insurers also purport to address the third of the *Garmendiz* requirements—whether the stay would further judicial economy. That discussion consists of arguing that *if the JWD settlement is approved*, any judicial resources and party resources devoted to this matter between now and such approval will have been wasted. What this argument ignores is the question of whether the proposed settlement *should* be approved. Plaintiff respectfully submits that the expenditure by the Court and the parties of minimal time, effort, expense and other resources, in the process of obtaining the approval of an inadequate settlement is not something that the Court or the parties should strive for.

- End of Page -

[3] There is a timing issue to be overcome. The deadline for objections is September 29, 2017. Plaintiff's counsel will be unable to obtain the discovery, review it and if necessary, draft and file an objection on behalf of their client by that date. If, however, the Court is otherwise favorably disposed towards Plaintiff's position, that should not be an impediment to allowing him to obtain this discovery.

**The Insurers Would Clearly Suffer No**
**<u>Hardship or Inequity if the Stay Were Denied</u>**

The last of the *Garmendiz* requirements (although listed second) is whether the proponent of the stay would suffer a hardship or inequity if forced to proceed. As set forth in *Garmendiz*: "This Court finds that consideration of the hardship imposed on the moving party if forced to proceed *is of paramount importance*." Significantly, the Insurers did not even attempt to justify the stay in terms of this requirement. They simply made no attempt to meet this requirement, despite that this Court has recently characterized it as being of "paramount importance." The reason is obvious—there is no argument to be made that they will suffer hardship or inequity if the stay is denied.

The closest they come is really an assertion supporting the judicial economy requirement: "[A] stay will reduce the burden of the litigation on the Court and the parties." (Motion at 8). However, "*Landis* requires the movant to establish *a hardship or inequity,* <u>not merely that the stay will reduce its burden</u>." *Garmendiz* at *2. (italics in original, underline added).

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court hold in abeyance Defendants' demand that this matter be dismissed, stayed or transferred and that it be permitted to engage in the limited discovery described herein and for a very short period of time (i.e., 45 days or, if the Court shortens the time period for responses, even less). Notably, Plaintiff seeks the following limited discovery: 1) all communication between the law firms and the parties to the settlement, including emails; 2) all discovery served by, propounded upon, or

obtained by any of the parties; 3) all settlement materials, including mediation statements; 4) copies of all insurance policies and all non-privileged communication between any of the defendants and their insurer(s) and/or indemnitor(s); and, 5) a copy of the log of all fax numbers for the disputed fax transmissions. Thereafter, the parties can then submit additional briefs for the Court's consideration.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
Richard Shenkan
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that all parties have received service as all subscribe to the ECF.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
By:
Richard Shenkan